UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANNA M. LEWIS, ET AL. | CIVIL ACTION |
| VERSUS | NO. 10-4600 |
| LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, ET AL. | SECTION "H" (4) |

**ORDER AND REASONS**

The matter before the Court is Defendants' Motion for Summary Judgment. (Doc. 66.) For the reasons that follow, Defendants' Motion is GRANTED.

**BACKGROUND**

Anna Lewis ("Anna") began her employment with the Louisiana Department of Transportation and Development ("DOTD") on November 3, 1980. LaTanya Lewis ("LaTanya"), Anna's daughter, began her employment with DOTD in May, 2000. Both women were employed

in District 02, Houma Sub-District, Gang 540.  LaTanya was a Mobile Equipment Operator 2 and Anna was a Roadside Development Herbicide Applicator.

Carl Harding ("Harding") was hired as the foreman/supervisor for District 02, Houma Sub-District, Gang 540 in February 2010.  On May 5, 2010 LaTanya filed a work grievance against Harding alleging that he verbally threatened her, asked her on dates, and sent her unwelcome text messages.  On May 7, 2010 Vernon Comardelle ("Comardelle"), Superintendent of Gang 540, issued a letter in response to LaTanya's grievance.  Comardelle advised that interviews with the members of Gang 540 revealed that no one had any knowledge of Harding's alleged actions.  Comardelle further informed LaTanya that a counseling session was held with Harding to reinforce DOTD policies on harassment and violence.  On May 27, 2010 Stephanie Ducote ("Ducote"), Compliance Programs Director for DOTD, sent LaTanya a letter finding that the Compliance Programs Office ("CPO") was unable to substantiate LaTanya's allegations of sexual harassment.  The CPO further found, after interviewing Gang 540 employees and supervisors, that she had shown considerable disrespect towards her chain-of-command and recommended a counseling program.

LaTanya filed her first Equal Employment Opportunity Commission ("EEOC") complaint on July 8, 2010.  Anna filed her first EEOC complaint on August 2, 2010.  After receiving their Right to Sue letters the Lewis's filed their Complaint against DOTD on December 22, 2010.  (Doc. 1.)  The Lewis's filed their First Amended Complaint on April 10, 2011.  (Doc. 8.)

On April 26, 2011 LaTanya was sent a Notice of Termination from District 02 Administrator

Michael J. Stack of DOTD. The Notice of Termination listed twenty-two incidents involving LaTanya that were all in violation of the Secretary's Policy and Procedures Memorandum No. 29 ("PPM"). On May 2, 2011 Anna was sent a Notice of Termination from District 02 Administrator Michael J. Stack. The Notice of Termination listed twenty-six incidents involving Anna that were all in violation of the PPM.

On October 19, 2012 the Lewis' filed a Second Amended Complaint. (Doc. 58.) The Lewis's allege that the Defendants' acts constituted sexual harassment, hostile work environment, and retaliation all in violation of Title VII of the Civil Rights Act. The Lewis's further allege that the Defendants violated the Louisiana Whistleblower Staute, La. Rev. Stat. Ann. § 23:967, et. seq.

On December 31, 2012 Defendants filed a Motion for Summary Judgment. (Doc. 66.) Defendants filed a supplemental memorandum on February 13, 2013. (Doc. 90.) Plaintiffs filed an opposition on February 14, 2013. (Doc. 93.) Plaintiffs filed a supplemental memorandum on March 15, 2013. (Doc. 106.)

**LEGAL STANDARD**

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (2012). A genuine issue of fact exists only "[i]f the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the nonmovant and draws all reasonable inferences in his favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528(5th Cir.1997). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.1995). Summary judgment is appropriate if the non-movant "[f]ails to make a showing sufficient to establish the existence of an element essential to that party's case...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial. *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir.2004) (internal citations omitted). "We do not ... in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir.2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)). Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported

motion." *Boudreaux v. Banctec, Inc.*, 366F.Supp.2d 425, 430 (E.D.La.2005).

## LAW AND DISCUSSION

A thorough review of the record reveals that no genuine issue of fact exists.  Accordingly, summary judgment is granted.

I.    Sexual  Harassment[1]

A.    <u>Allegations</u>

The Complaint alleges that Harding began making continuous sexual advances toward LaTanya after he became her supervisor in February, 2010.  (Doc. 1 at ¶3.)  Specifically, Harding "[a]sked LaTanya out on several occasions, sent her several inappropriate, and at times sexually

---

[1] Although the Complaint clearly dictates that LaTanya's sexual harassment claim is a hostile environment case, the Lewis's brief indicates that there is direct evidence of a *quid pro quo* case of sexual harassment.  (*See* Doc. 93 at 1.)  As such, the Court is "[r]equired to determine whether the complainant employee has or has not suffered a 'tangible employment action.'  If [she] has, [her] suit is classified as a '*quid pro quo*' case; if [she] has not, [her] suit is classified as a 'hostile environment' case."  *Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000).  A "tangible employment action" is "a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Santiero v. Denny's Restaurant Store*, 786 F. Supp. 2d 1228, 1233 (S.D. Tex. 2011) (citations and quotations omitted).  A *quid pro quo* plaintiff must show that she suffered a "tangible employment action" as a result of her "acceptance or rejection of [her] supervisor's alleged sexual harassment." *Casiano*, 213 F.3d at 283.  For the reasons more fully explained, *supra*, LaTanya cannot show that she suffered her termination as a result of her rejection of her supervisor's alleged sexual harassment.  Accordingly, the Court will analyze LaTanya's sexual harassment claim under the hostile work environment standard.

explicit, text messages to her cell phone, and made inappropriate comments about her appearance." (*Id.* at ¶4.) In response to Harding's "advances" LaTanya rejected them and asked Harding "[t]hat he only speak to her on work related issues." (*Id.* at ¶¶ 5-6.) The record before the Court further details that Harding stated that LaTanya's legs were pretty, that he would like to see LaTanya in a dress, that he told Anna that he would make it worth LaTanya's while if she saw him after hours, that he asked her to be his date to a wedding, that he asked her to shoot pool with him, and that he asked her to be closer to him. (Doc. 93 at 1-4.)

B. Arguments of the Parties

Defendant argues that the alleged actions of Harding were not sufficiently severe or pervasive so as to create either an objectively or subjectively hostile or abusive working environment. Even if the allegations are taken as truth, they do not rise to the level of actionable conduct under Title VII. Plaintiffs respond by asserting that this determination is best left for the jury to decide.

C. Analysis

Harding's actions were not sufficiently severe or pervasive to be actionable under Title VII. Accordingly, LaTanya's sexual harassment claim is dismissed.

Under Title VII, it is illegal "for an employer to fail or refuse to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. 2000e-2(a)

(1).  This text prohibits sexual harassment that takes the form of tangible employment action, such as a demotion or denial of promotion, or the creation of a hostile or abusive working environment. *Lauderdale v. Tex. Dept. of Criminal Justice*, 512 F.3d 157, 162 (5th Cir. 2007) (citations omitted).

"A plaintiff may establish a Title VII violation by proving that sex discrimination has created a hostile or abusive working environment."  *Woods v. Delta Beverage Grp.*, 274 F.3d 295, 298 (5th Cir. 2001) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986)).  "In order to establish a hostile working environment claim, a plaintiff must prove five elements: (1) the employee belonged to a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action."  *Woods*, 274 F.3d at 295–6 (citations and quotations omitted).

Reviewing the record in the light most favorable to LaTanya the Court finds that she has failed to show that the alleged harassment was severe or pervasive enough to alter a term condition, or privilege of her employment.  Accordingly, the Court need not address the other four factors and LaTanya's sexual harassment claim is dismissed.

      1.    **Term, Condition, or Privilege**

For the harassment to affect a "term, condition, or privilege" or employment, a plaintiff must "subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable."  *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003)

(citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)).  In order to be sufficiently severe or pervasive, the conduct at issue cannot merely be tinged with offensive sexual connotations, but must actually constitute discrimination because of sex.  *La Day v. Catalyst Tech. Inc.*, 203 F.3d 474, 478 (5th Cir. 2002) (citations omitted).

To determine whether the workplace conduct is adequately severe or pervasive courts look to the totality to the circumstances.  *Stewart v. Miss. Transp. Com'n*, 586 F.3d 321, 330 (5th Cir. 2009).  Specifically, "[c]ourts must consider the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ramsey v. Henderson*, 286 F.3d at 268 (quoting *Walker v. Thompson*, 214 F.3d 615, 624 (5th Cir. 2000)) (internal quotations omitted).  Ultimately, "employees who are subjected to insults, epithets, and other workplace degradations often see their claims rejected under this demanding standard." *Willis v. Williamson*, No. 12-cv-2069, 2012 WL 6929339, at *4 (W.D. La. Nov. 19, 2012).

The Court finds that Harding's conduct was not severe enough to rise to the level to be an actionable Title VII claim.  LaTanya alleges that she was asked on dates, told that her legs were nice, and sent unwelcome text messages.  Harding did not touch LaTanya in a sexual manner, e.g. on her breasts, buttocks, or legs.  Moreover, Harding neither attempted to kiss LaTanya nor propositioned her for sex.  While LaTanya may have been offended by Harding's conduct, the Courts have

repeatedly held that this type of conduct is not severe enough to create a hostile work environment.[2] In the alternative, Courts have found much more severe conduct to be sufficiently severe to affect a term, condition, or privilege of employment.[3]

This Court finds this case to be similar to *Buenrostro v. Flight Safety Intern., Inc.*, 62 Fed. Appx. 556, 556 (5th Cir. 2003). In *Buenrostro* the plaintiff asserted that her supervisor discriminated against her because of her gender. In support she supplied evidence of being hired

---

[2] *See, e.g., Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (the mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (Courts have continuously held that simple teasing, offhand comments, isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment); *Shepherd v. Comptroller of Public Accounts of the State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999) (the touching of an employee's shoulder is not the type of severe conduct that courts have found to create a hostile environment); *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 328 (5th Cir. 2004) (finding that having a remark made about another employee's body, being slapped on the behind with a newspaper, having her breasts and behind grabbed or brushed against, being held and tried to kiss, being asked to come in early to be alone, and being watched while in the bathroom washing her hands is insufficiently severe to affect a term, condition, or privilege of employment); *Gibson v. Potter*, 264 Fed. Appx. 397, 398 (5th Cir. 2008) (conduct of supervisor who grabbed plaintiff on the buttocks and made suggestive comments while she was conversing with another employee is not sufficiently severe or pervasive to alter a term or condition of employment; *Derouen v. Carquest Auto Parts, Inc.*, 275 F.3d 42, 42 (5th Cir. 2001) (plaintiff's allegations that co-worker attempted to grab her breast, put his hand on and rub her thigh, and that customer made sexually threatening remarks to her does not rise to the level necessary to support a hostile work environment claim)

[3] *See, e.g., Harvill v. Westward Communications, LLC*, 433 F.3d 428, 435–6 (5th Cir. 2005) (conduct is sufficiently severe to affect a term, condition, or privilege of employment when employee endures, over a seven-month period, being grabbed and kissed on the cheek, having rubber bands popped at her breasts, having her breasts fondled numerous times, having her buttocks patted numerous times, and being rubbed against from behind); *Taylor-Rogers v. Robb & Stucky, Ltd.*, 82 Fed. Appx. 974, 975 (5th Cir. 2003) (evidence that co-employee rubbed up against plaintiff on a daily basis, simulated a sex act with her, and unbuttoned her blouse to touch her breast underneath her bra was sufficient to create a genuine issue of fact as to the severity and pervasiveness of the harassment)

based on her appearance, invited to lunch, complimented on her appearance, disfavored in comparison to another woman, and enduring a change in attitude after she refused her supervisor's advances. *Id.* The Fifth Circuit found that these complained of actions did not qualify as conduct egregious enough to alter the conditions of her employment. *Id.* The Fifth Circuit highlighted several Seventh Circuit cases in support of its holding. *Id.* (citing *Weiss v. Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333, 334 (7th Cir. 1993) (rejecting a claim when supervisor asked plaintiff for dates); *Baskersville v. Culligan Int'l Co.*, 50 F.3d 428, 433 (7th Cir. 1995) (rejecting a claim when supervisor called plaintiff a pretty girl); *Scott v. Sears, Roebuck & Co.*, 798 F.2d 210, 211 (7th Cir. 1986) (rejecting a claim when supervisor repeatedly propositioned plaintiff)). In light of the *Buenrostro* and Seventh Circuit cases, this Court finds that Harding's similar conduct was not egregious enough to alter the conditions of her employment.

The Court also highlights that the frequency of Harding's alleged conduct was minimal. Harding's alleged conduct lasted for two months. (Doc. 88-5 at 10.) Within these two months LaTanya was asked to one wedding, asked to shoot pool two times, was texted three times about how she was feeling, and was told that her legs look nice. The Court finds that these allegations are less pervasive than those experienced by the plaintiff in *Taylor v. Seton Healthcare*. No. A-10-CA-650LY, 2012 WL 13680, at *20 (W.D. Tex. Jan. 3, 2012). The plaintiff in *Taylor* testified that for two months her supervisor regularly put his hand or arm on her shoulders, once put his hand around her waste and pulled her into a supply closet, once put his arms around her arms and chest

from behind in the supply closet, made sexually suggestive comments to her during the supply closet incidents, and continued to touch and shake her despite her requests to stop. *Id.* The district court found that these actions were unpleasant and creepy, but did not reach the severity and pervasiveness threshold required to find a hostile work environment. While the frequency of the conduct in LaTanya's case is similar to that in *Taylor*, the conduct is even less creepy and unpleasant than what the plaintiff experienced in *Taylor*.

The *Taylor* case and the case *sub judice* can be juxtaposed with *Jones v. Texas Youth Commission* wherein the district court found that humiliating comments made daily for two months were extremely pervasive. No. 9:07CV3, 2007 WL 4290001, at *6 (E.D. Tex. Dec. 4, 2007). Highlighting that comments were made in front of others with the purpose of humiliating her, that the comments started rumors regarding her sexuality, and that multiple harassers intended to convey that plaintiff would have an easier time at work if she were to have sex with them, the court found that, although lasting for only two months, the severity of the conduct were extremely pervasive and sufficient to defeat summary judgment. Unlike the comments made to the plaintiff in *Jones*, Harding's comments were not daily, none of her co-workers heard them, and were not made with the intention of humiliating her.

The Supreme Court has noted that these standards are "[s]ufficiently demanding to ensure that Title VII does not become a general civility code. Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive

language, gender-related jokes, and occasional teasing." *Faragher*, 524 U.S. at 788. These are exactly the types of allegations that LaTanya testifies to. While LaTanya may have felt uncomfortable, the comments were infrequent and lasted for only two months. Accordingly, LaTanya has not raised a genuine issue that the harassment affected a "term, condition, or privilege" of employment.

II.     *Retaliation*

The Lewis's retaliation claim fails because the Lewis's fail to show a *prima facie* case of retaliation. The Court finds that the Lewis's have failed to create a genuine issue of fact that a causal connection existed between the protected activity, the filing of LaTanya's grievance, and the adverse employment action, the termination of the Lewis's. Accordingly, the Lewis's retaliation claim is dismissed.

    A.     <u>Arguments of the Parties</u>

The DOTD asserts that the Lewsis's cannot support a *prima facie* case of retaliation because the sexual harassment claim and the termination are not causally connected. The DOTD argues that the eleven months between the filing of the sexual harassment claim and the Lewis's termination further indicates that the two decisions were not causally connected. Lastly, the DOTD argues that there was a legitimate, non-discriminatory reason for terminating both women as evidenced by the numerous infractions that both LaTanya and Anna committed and their numerous violations of the PPM.

The Lewis's allege that the DOTD retaliated against them after LaTanya made her sexual harassment claim. Specifically, they allege that they were given more difficult jobs and that the infractions cited by the DOTD were not true. Thus, they contend that a jury should be the one to determine who was "lying." The Lewis's further maintain that a jury must decide whether or not their termination was causally connected to LaTanya's sexual harassment claim.

B.  Analysis

Title VII prohibits an employer from discriminating against an employee who has opposed an employment practice made unlawful under Title VII. 42 U.S.C. § 2000e-3(a). "To establish a prima facie case of retaliation, the plaintiff must establish that (1) [she] participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy*, 492 F.3d at 556-7. "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). The antiretaliation provision of Title VII "[c]overs those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) Ultimately, summary judgment is appropriate if the plaintiff cannot support all three elements. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769 (5th Cir. 2001).

The Court finds that there is no connection between the Lewis's involvement in the sexual harassment charge and their eventual discharge. "A 'causal link' is established when the evidence shows that the employer's decision to terminate was based in part on knowledge of the employee's activity." *Tryals v. Altairstrickland, LP*, No. H-08-3653, 2010 WL 743917, at *11 (S.D. Tex. Feb. 26, 2010) (quoting *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)). The Lewis's cannot establish this causal link. The Lewis's discharge occurred almost one year after LaTanya brought her charge. The DOTD detailed twenty incidents over the year wherein LaTanya violated nine provisions of the PPM. (Doc. 66-8.) The DOTD detailed twenty-two incidents over the year wherein Anna violated nine provisions of the PPM. (Doc. 66-9.)

The Court finds this case to be on point with *Winchester v. Galveston Yacht Bason*, 943 F. Supp. 776 (S.D. Tex. 1996). In *Winchester* the court found that there was no connection between Plaintiff's involvement in a sexual harassment charge when her discharge was almost one year later. *Id.* at 780. During that year, the plaintiff continued to create office tension because of her inability to get along with coworkers and furthered her insubordinate and disrespectful attitude towards her supervisor. *Id.* At the time of her discharge the plaintiff had been the subject of two reprimand letters and was on probation. *Id.* The Court found that the plaintiff offered "[n]o concrete evidence to indicate why it was not this attitude but instead her engaging in a protected activity that caused her to be discharged." *Id.* The Court noted a plaintiff's subjective, mind-reading type evidence is insufficient to establish a causal connection between plaintiff's protected

-14-

activity and her discharge. *Id.*

Similarly, the Lewis's were terminated after a year of documented insubordinate behavior, misconduct, inappropriate attitude, false statements, and failure to follow safety precautions and rules. DOTD supervisors continually met with both LaTanya and Anna to discuss their performance ratings and discuss how to improve them. The Lewis's continually rebuffed three levels of superiors throughout this time - Harding, their immediate supervisor, Comardelle, Harding's supervisor, and Teresa Scivicque, Comardelle's supervisor. The year of repeated performance meetings, counseling sessions, discussions with supervisors, and the pre-deprivation hearing show that the connection between the sexual harassment complaint and the termination is tenuous at best.

Ultimately, "the Fifth Circuit has held that close timing between an employee's protected activity and an adverse action may provide the causal connection required to set out a *prima facie* case of retaliation." *Wood v. Chertoff*, 523 F. Supp. 2d 509, 522 (W.D. Tex. 2007) (citing *Strong v. Univ. HealthCare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)). A time lapse of four months has satisfied the causal connection for summary judgment purposes. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 995 (5th Cir. 2005) (citations omitted). A time lapse of seven months or longer, however, is too remote to establish this causal connection.[4]

---

[4] *See, e.g., Bell v. Bank of Am.*, 171 Fed. Appx. 442, 444 (5th Cir. 2006) (a seven month lapse does not support a causal connection); *Gibson v. Verizon Services Org.*, 498 Fed. Appx. 391, 397 (5th Cir.

The initial grievance filed by LaTanya was on May 5, 2010 and the first EEOC Complaint was filed on July 8, 2010. LaTanya and Anna were terminated on April 26, 2011 and May 2, 2011 respectively. The terminations are approximately one year after LaTanya's internal complaint and ten months after her EEOC complaint. The Court finds that the ten month to one year differential between LaTanya's complaint and her and Anna's termination is insufficient to show a causal connection. Summary judgment is proper when a plaintiff presents no evidence of a "causal link" between his termination and Title VII protected activity. *See Stewart*, 485 Fed. Appx. at 653. Accordingly, summary judgment is granted and the Lewis's retaliation claim is dismissed.

III.    *Louisiana Whistleblower Protection Act*

Louisiana's "Whistleblower Statute" provides in pertinent part:

---

2012) ("Seven months is too long to support an inference of a causal link, without additional evidence"); *Stewart v. RSC Equip. Rental, Inc.*, 485 Fed. Appx. 649, 653–4 (5th Cir. 2012) (a period of seven months between the protected activity and termination is too long to serve as indicia of a causal nexus); *Rein v. Honeywell Intern. Inc.*, 362 Fed. Appx. 395, 398 (5th Cir. 2010) (a ten month differential between the discrimination complaint and adverse employment action is insufficient to show a causal link); *Grizzle v. Travelers Health Network, Inc.*, 14 Fed. Appx. 261, 268 (5th Cir. 1994) (ten month period between protected activity and adverse employment action suggests that a retaliatory motive is highly unlikely); *Harvey v. Stringer*, 113 Fed. Appx. 629, 631 ("This Court has never held that a ten month lapse, on its own, is sufficient to satisfy the causal connection for summary judgment purposes"); *Ameen v. Merck & Co.*, 226 Fed. Appx. 363, 376 (5th Cir. 2007) (termination eleven months after the complaint casts significant doubt for a retaliation claim); *Wood*, 523 F. Supp. 2d at 523 (a time lapse of one year is too remote to establish causation); *Lopez v. Martinez*, 24 Fed. Appx. 648, 649 (5th Cir. 2007) (termination one year after the filing of a complaint is inadequate to support a causal link); *Hunter v. Goodwill Industries, SELA, Inc.*, No. 05-2698, 2007 WL 1521013, at *6 (E.D. La. May 23, 2007) (alleged protected activity occurring one year prior to termination is too remote to establish causal connection).

>A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

La. Rev. Stat. Ann. § 23:967.

The Louisiana Whistleblower Statute "[p]rotects employees who disclose or threaten to disclose an act or practice at their place of employment that violates" state law. *Genella v. Renaissance Media*, 115 Fed. Appx. 650, 652 (5th Cir. 2004) (quoting *Ware v. CLECO Power LLC*, 90 Fed. Appx. 705, 709 (5th Cir. 2004). "To state a claim under La. Rev. Stat. § 23:967m a plaintiff must allege the violation of state law." *Id.* If the plaintiff does not indicate in her complaint which state law, if any, was violated by the defendant then the plaintiff fails to state a claim under La. Rev. State. § 23:967. *Id.*

The Lewis's three Complaints are completely devoid of any allegations that the Defendants have violated any state law. (*See* Docs. 1, 8, 55.) In accordance with the standard that the Fifth Circuit has articulated, the Court finds that the Lewis's cannot make a claim under the Louisiana Whistleblower Statute. Accordingly, this claim is dismissed.

## CONCLUSION

For the foregoing reasons Defendants Motion for Summary Judgment is GRANTED (Doc. 66) and all of Plaintiffs' claims are DISMISSED.

Judgment shall be entered in accordance with this Order.

New Orleans, Louisiana on this 13th day of May, 2013.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT COURT JUDGE**